USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/15/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DANA MARIE QUIRK,

                                      Plaintiff,                            **OPINION AND ORDER**

           -against-                                             **18-CV-0858 (KHP)**

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

                                      Defendant.
------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Dana Marie Quirk ("Plaintiff"), who is represented by counsel, commenced this action against Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act from June 10, 2013, the date her application for Supplemental Security Income benefits ("SSI") was filed, through the date of the decision.

      The parties submitted a joint stipulation, in lieu of cross-motions for judgment on the pleadings (Doc. No. 19), pursuant to this Court's Order at Doc. No. 8. For the reasons set forth below, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED insofar as it requests remand for further proceedings.

**BACKGROUND**

**I.**    *Summary of Claim and Procedural History*

      Plaintiff, who is 47 years of age, has lived with a friend's family since she separated from her husband in 2013. (R. 338.) She has two sons – both in their twenties – who were adopted

by Plaintiff's mother in or around 2005. (R. 356-57.) Plaintiff has not worked since 1996, when she left her job at Burger King to have her first child. (R. 328, 358.) In 2009, Plaintiff filed a prior SSI application, which was denied after a hearing before an Administrative Law Judge ("ALJ"). (R. 24.) In 2011, the Appeals Council denied Plaintiff's request for review of the decision. (*Id.*) On June 10, 2013, Plaintiff protectively filed her current SSI application, alleging disability due to back and neck pain, depression, unspecified mental health issues, and personality disorder. (R. 616.) The Court assumes knowledge of and does not repeat here all facts concerning Plaintiff's medical treatment.

On November 19, 2013, the Social Security Administration denied Plaintiff's claim. (R. 24.) On October 14, 2015, a hearing took place before ALJ John Barry. (R. 319-31.) Following this hearing, Plaintiff underwent an additional consultative examination to obtain intelligence testing. (R. 884.) On August 10, 2016, another hearing took place – this time before ALJ Brian Lemoine. (R. 332-66.) ALJ Lemoine denied Plaintiff's application by written decision dated August 24, 2016. (R. 21-36.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 28, 2017. (R. 1-4.)

## II. *The Commissioner's Decision*

ALJ Lemoine determined that Plaintiff had not engaged in substantial gainful activity since June 10, 2013, the date on which her SSI application was filed. (R. 26.) The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines; chronic asthma; bronchiectasis; major depressive disorder; and anxiety disorder. (*Id.*) However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (R. 27.) The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: "She should have no concentrated exposure to environmental irritants, which would include dust, odors, fumes, and gases. She is able to perform simple routine repetitive tasks in a low-contact environment with no more than occasional interaction with coworkers and the public." (R. 30.) The ALJ determined that Plaintiff had no past relevant work. (R. 35.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 35.) Thus, the ALJ found that Plaintiff had not been disabled since June 10, 2013, the date that her SSI application was filed.

## DISCUSSION

### I.  The Applicable Law

#### A.  Judicial Standard of Review of Commissioner's Determination

The court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id*. So long as they are supported by substantial evidence in the administrative record, the findings of the ALJ after a hearing as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d

3

Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record to explain his or her reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Thus, the court does not determine *de novo* whether a claimant is disabled. *Id.* (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the

4

evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded treating physician evidence typically requires remand). Eschewing rote analysis and conclusory explanations, the ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand. 42 U.S.C. § 405(g).

### B. *Legal Principles Applicable to the Commissioner's Disability Determination*

Under the Social Security Act, every individual considered to have a "disability" is entitled to benefits. 42 U.S.C. §§ 423(a)(1), 1382. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

5

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether an individual is entitled to receive SSI disability benefits, the Commissioner is required to conduct the following five-step inquiry:

(1) First, determine whether the claimant is currently engaged in any substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i).

(2) Second, if not gainfully engaged in any activity, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe." 20 C.F.R. § 416.920(a)(4)(ii).

(3) Third, if the claimant has a "severe impairment," determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled and the claimant will be eligible for benefits. 20 C.F.R. § 416.920(a)(4)(iii). At this stage, the Commissioner also must determine the claimant's residual functional capacity ("RFC"); that is, her ability to perform physical and mental work activities on a sustained basis despite her impairments.[1] 20 C.F.R. § 416.920(a)(4)(iv).

---

[1] A claimant's residual functional capacity is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* S.S.R. 96-9P (clarifying that a claimant's residual functional capacity is his maximum ability to perform full-time work on a regular and continuing basis).

6

(4) Fourth, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform her past work. *Id.*

(5) Fifth, if the claimant is not capable of performing work she performed in the past, the Commissioner must determine whether the claimant is capable of performing other work. 20 C.F.R. § 416.920(a)(4)(v); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999). The claimant bears the burden at the first four steps. *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However at the last step, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

## II. *Application of the Legal Standards to Plaintiff's Claim*

Plaintiff argues that she is *per se* disabled under Medical Listing 12.05(C) and that, in any event, the ALJ failed to properly weigh certain medical opinion evidence and to properly evaluate Plaintiff's testimony in reaching his decision. For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's determination at step three that Plaintiff did not satisfy the criteria of Listing 12.05(C) but that the ALJ committed legal error warranting remand in failing to seek out additional information from Plaintiff's treating psychiatrist Dr. Julius LaGuerre prior to affording Dr. LaGuerre's opinion only partial weight.

---

The ALJ's assessment of a claimant's residual functional capacity must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1545(a)(3)).

7

### A. Applicability of Medical Listing 12.05(C)

Under the version of Listing 12.05 in effect at the time of Plaintiff's application and the ALJ's decision, a person is *per se* disabled if she exhibits "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairments before age 22." *Bushey v. Berryhill*, 739 F. App'x 668, 672 (2d Cir. 2018) (citing *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)). The Second Circuit has explained that "adaptive functioning" refers to an individual's ability to cope with the challenges of ordinary everyday life. *Id.* Listing 12.05(C) additionally stated that "[t]he required level of severity for this disorder is met when the applicant has [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* (internal quotation marks omitted) (alterations in original). Notably, "persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." *Id.*

ALJ Lemoine made the following determination with respect to the applicability of Listing 12.05(C) to Plaintiff:

> The claimant's IQ testing was performed in December 2015, which the undersigned notes occurred when the claimant was 44 years old, significantly after the age of 22. The claimant's Wechsler Adult Intelligence Scale Fourth Edition (WAIS-IV) testing demonstrated a full scale IQ of 71, which is above the listing requirement of 70. The claimant also does not have the required deficits in adaptive functioning, which initially manifested during the developmental period. The claimant has demonstrated the ability to work in the past and reported that she only stopped working at Burger King after five years when she became pregnant with her first child.
>
> (R. 29.) (internal citations omitted).

8

As an initial matter, this Court finds that the ALJ erred in concluding that Plaintiff did not meet the IQ requirement of Listing 12.05(C). ALJ Lemoine considered only Plaintiff's full scale IQ of 71 and failed to consider Plaintiff's verbal IQ of 61. Notably, the IQ requirement of Listing 12.05(C) is met when an applicant has a "valid verbal, performance, *or* full scale IQ of 60 through 70." *Bushey*, 739 F. App'x at 672 (emphasis added). Thus, Plaintiff's verbal IQ of 61 satisfied the relevant IQ requirement. Nevertheless, as explained in greater detail below, this Court finds that the ALJ's error was harmless because substantial evidence in the administrative record supports the ALJ's determination that Plaintiff's adaptive functioning was sufficiently intact as not to meet the listing's threshold requirement. *See Zabala*, 595 F.3d at 409 ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration") (internal quotation marks and citations omitted).

Courts in this District "have analyzed adaptive functioning to mean a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *Vargas v. Astrue*, No. 09-cv-6606 (BSJ) (DF), 2011 WL 9518014, at *12 (S.D.N.Y. Nov. 8, 2011) (internal quotation marks and citation omitted); *see also Lebron v. Berryhill*, No. 14-cv-5921 (CS) (LMS), 2018 WL 4658808, at *18 (S.D.N.Y. June 11, 2018). In support of her argument that she has deficits in adaptive functioning, Plaintiff points to her enrollment in special education classes throughout high school (R. 326) and her difficulty with reading and writing (R. 326-27). However, Plaintiff cites only to cases in the Northern and Western Districts of New York for the proposition that this Court should consider such evidence in analyzing Plaintiff's adaptive functioning. In this District, courts look to a plaintiff's activities of daily living rather than to her

9

academic deficits. *See Lebron*, 2018 WL 4658808, at *18 (citing *Vargas*, 2011 WL 9518014, at *1) (courts in this District do not consider "circumstantial evidence, such as whether a claimant attended special education classes, dropped out of school before graduation, or had difficulties in reading, writing, or math" in evaluating adaptive functioning).

Here, the ALJ appropriately considered Plaintiff's ability to work in the past as evidence of her effective daily living skills. (R. 29.) Plaintiff worked for five years at Burger King (both before and after age 22) and, in that job, she cooked, cleaned, prepared food, worked as a cashier (including making change for customers), and stocked shelves. (R. 329, 358-59, 639.) Plaintiff additionally reported in December 2015 that she could perform self-care daily, cook, clean, do laundry, and drive and that her socialization was "okay." (R. 886.) Plaintiff traveled alone to her intelligence evaluation using public transportation. (R. 884.) Accordingly, substantial evidence in the record supports Plaintiff's "ability to cope with the challenges of ordinary everyday life." *See Bushey*, 739 F. App'x at 672 (citing *Talavera*, 697 F.3d at 151); *Hooper v. Colvin*, 199 F. Supp. 3d 796, 810-11 (S.D.N.Y. 2016) (finding ALJ's step three determination that plaintiff did not satisfy criteria of Listing 12.05 was supported by substantial evidence where, despite "a history of learning difficulties from a young age," plaintiff could satisfactorily navigate such activities as cooking, cleaning, and driving a car); *Vargas*, 2011 WL 9518014, at *12 (finding ALJ's step three determination that plaintiff did not have "deficits in adaptive functioning" was supported by substantial evidence where, notwithstanding a doctor's indication that plaintiff had "significantly subaverage general intellectual functioning," plaintiff could cook, clean, and use public transportation independently). Where the Commissioner's decision is supported by substantial evidence, this Court must uphold its decision even where

contrary evidence exists. *See Vargas*, 2011 WL 9518014, at *12. This Court thus upholds the Commissioner's determination at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings.

### B.     *Plaintiff's Residual Functional Capacity*

The ALJ next found that Plaintiff retained the RFC to perform light work with the following additional limitations: "She should have no concentrated exposure to environmental irritants, which would include dust, odors, fumes, and gases. She is able to perform simple routine repetitive tasks in a low-contact environment with no more than occasional interaction with coworkers and the public." (R. 30.) Plaintiff disputes only the ALJ's findings concerning Plaintiff's mental impairments, arguing, *inter alia*, that the ALJ failed to properly weigh and consider the opinion of Plaintiff's treating psychiatrist Dr. Julius LaGuerre.

#### 1.     *The "Treating Physician Rule"*

Under the applicable regulations in effect at the time Plaintiff filed her claim, an ALJ must give deference to the opinions of a claimant's treating physicians.[2] Specifically, a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 416.927(c)(2); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must give "good reasons" for declining to afford a treating physician's opinion controlling weight. 20 C.F.R. § 416.927(c)(2); *Schisler v. Sullivan*, 3 F.3d 563,

---

[2] Although the Commissioner has since eliminated the "treating physician rule," this rule remains applicable to claims filed before March 27, 2017. *Cortese v. Comm'r of Soc. Sec.*, No. 16-cv-4217 (RJS), 2017 WL 4311133, at *3 n.2 (S.D.N.Y. Sept. 27, 2017).

11

568 (2d Cir. 1993). Before an ALJ can give a treating physician's opinion less than controlling weight, the ALJ must consider various factors to determine the amount of weight the opinion should be given, including: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical support for the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's level of specialization in the area, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2); *Schisler*, 3 F.3d at 567. The ALJ must then "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (internal quotation marks and citation omitted). The ALJ need not "slavish[ly] recit[e] . . . each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

### 2. *The ALJ's Duty to Develop the Record*

Additionally, in Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants. *See Moran,* 569 F.3d at 108, 112. As part of this duty, the ALJ must investigate the facts and develop the arguments both for and against granting benefits. *Id.* Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history. *Pratts,* 94 F.3d at 34, 37 (citing 20 C.F.R. §§ 404.1512(d)-(f)). The ALJ must develop the record even where the claimant has legal counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Whether the ALJ has met his duty to develop the record is a threshold question, and remand is appropriate where this duty is not discharged. *See, e.g., Moran,* 569 F.3d at 114-15 ("We vacate not because the ALJ's decision was not supported by substantial

evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### 3. *Analysis of the ALJ's Treatment of Dr. Julius LaGuerre's Opinion*

ALJ Lemoine, in determining that Plaintiff was not disabled under the Act, made the following finding with respect to Dr. LaGuerre's opinion:

> Dr. LaGuerre opined that the claimant would be able to carry out simple one to two step instructions, make simple work-related decisions, and asking simple questions or requesting assistance, but would be moderately limited in areas such as working in coordination with others, interacting appropriately, and making plans independently. These limitations are consistent with the evidence of record, including the consultative examiner opinions and observations discussed above. However, Dr. LaGuerre further opined that the claimant would miss two to three days of work per month due to her impairments. This part of the opinion is given less weight, as there is no explanation as to why the claimant would be absent that much or what evidence supports that assessment. Thus, Dr. LaGuerre's opinion is only given partial weight.

(R. 33.) (internal citation omitted).

Because Dr. LaGuerre was Plaintiff's treating psychiatrist, the ALJ was required to give Dr. LaGuerre's opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 416.927(c)(2); *see also Shaw*, 221 F.3d at 134. Significantly, the ALJ did not identify an inconsistency with other evidence in the record and, instead, stated that "there is no explanation as to why the claimant would be absent [two to three days per month] or what evidence supports that assessment." (R. 33.) The ALJ's identification of a missing medical explanation, rather than constituting a valid reason for affording a treating physician's opinion less than controlling weight, triggered the ALJ's obligation to further develop the administrative record. *See Castillo v. Comm'r of Soc. Sec.*, No.

13

17-cv-9953 (JGK) (KHP), 2019 WL 642765, at *7 (S.D.N.Y. Feb. 15, 2019) (holding that ALJ should have sought to re-contact nurse practitioner and treating physician regarding the basis for their opinion that plaintiff had "moderate-to-marked" limitations in his ability to "[p]erform activities within a schedule and consistently be punctual") (alterations in original).  If asked, Dr. LaGuerre might have been able to provide a medical explanation supporting his opinion that Plaintiff would miss two to three days of work per month, particularly in light of the seemingly corroborating opinion of consultative psychologist Dr. Taina Ortiz – which the ALJ afforded "great weight" – stating that Plaintiff exhibited "moderate limitation in her ability to . . . maintain a regular schedule." (R. 33, 737.)  The ALJ's failure to re-contact Dr. LaGuerre in an attempt to obtain any such information constitutes a failure to fully develop the administrative record.  *See Rosa*, 168 F.3d at 79 ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.")  Moreover, as this Court cannot conclude that application of the correct legal principles would have led the ALJ to the same conclusion reached, such error is not harmless and requires remand.[3]

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED insofar as this case is remanded for further proceedings.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: March 15, 2019
     New York, New York

---

[3] Because the Court remands this decision to the Commissioner to develop the record fully and hold further proceedings, the Court need not address Plaintiff's remaining arguments concerning the ALJ's purported failure to properly weigh and/or consider certain medical opinion evidence and to properly evaluate Plaintiff's testimony.

KATHARINE H. PARKER
United States Magistrate Judge